| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF CASWELL<br><br>THE ESTATE OF SHERRIE MERRITT, by and through its Administrator, KASEY MINOR,<br><br>                Plaintiff,<br><br>v.<br><br>RX GRAHAM, LLC, NORTH CAROLINA CVS PHARMACY, L.L.C., CGLEN RAVEN NC REALTY I, L.P., CGLEN RAVEN NC REALTY II, L.P. and CVS PHARMACY, INC. f/k/a REVCO DISCOUNT DRUGS CENTERS, INC.<br><br>                Defendants. | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>19 CVS 89<br><br><br><br><br><br><br><br>**COMPLAINT** |

NOW COMES Plaintiff, complaining of Defendants, to allege and say:

## PARTIES AND JURISDICTION

1. Plaintiff Kasey Minor is a citizen and resident of Alamance County who qualified as the Administrator of the Estate of Sherrie Merritt ("Plaintiff") in the General Court of Justice, Superior Court Division, Caswell County, North Carolina and was duly appointed on May 21, 2018.

2. Upon information and belief and at all times relevant, Defendant RX Graham, LLC (hereinafter "Rx Graham") is a foreign corporation organized and existing under the laws of the State of Delaware, with its principle office located in Westport, Connecticut, and pursuant to N.C.G.S. §59-902 is authorized to transact business in the State of North Carolina, and is doing business in North Carolina.

3. Upon information and belief, and at all times relevant, Defendant Rx Graham owns the premises located at 401 S. Main Street, Graham, Alamance County, North Carolina.

4. Upon information and belief, at all times relevant Defendant North Carolina CVS Pharmacy, L.L.C. (hereinafter "CVS Main") was a corporation organized and existing under the laws of the State of North Carolina, with its principle office located in Woonsocket, Rhode

1

Island, and pursuant to N.C.G.S. §59-902 is authorized to transact business in the State of North Carolina, and is doing business at the premises located at 401 S. Main Street, Graham, North Carolina.

5. Upon information and belief, Defendant Rx Graham leases the premises located at 401 S. Main Street, Graham, North Carolina to Defendant CVS Main. The premises are used and occupied by Defendant CVS Main, for the purpose of conducting thereon a retail store and pharmacy named CVS Store #4655, which is open to the general public.

6. Upon information and belief and at all times relevant, Defendants CGlen Raven NC Realty I, LP (hereinafter "Glen Raven I") and CGlen Raven NC Realty II, LP (hereinafter "Glen Raven II") are foreign corporations organized and existing under the laws of the State of Delaware, with its principle office located in Farmington, Connecticut, and pursuant to N.C.G.S. §59-902 are authorized to transact business in the State of North Carolina, and are doing business in North Carolina.

7. Upon information and belief, and at all times relevant, Defendant Glen Raven I and Glen Raven II are each 50% owners in the premises located at 2017 W. Webb Avenue, Glen Raven, Alamance County, North Carolina.

8. Upon information and belief, at all times relevant Defendant CVS Pharmacy, Inc. (hereinafter "CVS Webb") was a corporation organized and existing under the laws of the State of North Carolina, with its principle office located in Woonsocket, Rhode Island, and pursuant to N.C.G.S. §59-902 is authorized to transact business in the State of North Carolina, and is doing business at the premises located at 2017 W. Webb Avenue, Glen Raven, North Carolina.

9. Upon information and belief, Defendants Glen Raven I and Glen Raven II lease the premises located at 2701 W. Webb Avenue, Glen Raven, North Carolina to Defendant CVS Webb. The premises are used and occupied by Defendant CVS Webb, for the purpose of conducting thereon a retail store and pharmacy named CVS Store #7559, which is open to the general public.

10. At all times relevant, CVS Main and CVS Webb (hereinafter collectively "CVS Defendants") are and were licensed pharmacies who employed registered pharmacist(s) and pharmacy technicians in the State of North Carolina as defined by N.C.G.S. §90-21.11, who were acting in the course and scope of their employment with CVS Main and CVS Webb. All allegations contained herein against CVS Main and CVS Webb also refers to and includes actual

or apparent agents and employees and/or servants of CVS Defendants, either directly or vicariously, under the principles of partnership, agency, apparent authority, corporate liability, ostensible agency and *respondeat superior*.

## NATURE OF THE CASE

11. This action is a medical malpractice action as that term is used and defined in N.C. Gen. Stat. § 90-21.11 and Rule 26(f1) of the North Carolina Rules of Civil Procedure and a common law negligence action and seeks recovery for the personal injuries and other losses suffered by Plaintiff.

## FACTS

12. The allegations set forth in Paragraphs 1 through 11 are hereby realleged and incorporated by reference as if fully set forth herein.

13. In 2001, Sherrie Merritt established herself as a patient with Denny Tate, M.D. who was practicing medicine at Graham Internal Medicine in Graham, North Carolina. Ms. Merritt's underlying health concerns included hypertension, hyperlipidemia, reflux, sleep apnea, depression, migraines and chronic back pain.

14. Ms. Merritt used CVS Defendants to fill her prescriptions.

15. In early 2010, Ms. Merritt's family was concerned regarding her dependency on prescription pain medicine and with some persuasion Ms. Merritt reluctantly agreed to be admitted to Fellowship Hall, a substance abuse treatment center, for 28 days.

16. On May 29, 2013 Ms. Merritt returned to Dr. Tate for follow up. At that visit, Ms. Merritt advised that she had taken Gabapentin in the past and it helped with her back pain, Dr. Tate prescribed 600 mg two times a day. Defendant CVS Main filled the prescription for Gabapentin that same date, 60 pills.

17. Defendant CVS Main refilled Gabapentin 600 mg, 60 pills on June 10, 2013, July 7, 2013, August 2, 2013, August 30, 2013 and October 1, 2013.

18. Ms. Merritt saw Dr. Tate on October 16, 2013 and he increased her Gabapentin to 800 mg three times a day for back and leg pain. Defendant CVS Main filled the prescription for Gabapentin 800 mg that same day, 90 pills

19. Defendant CVS Main refilled Gabapentin 800 mg, 90 pills on November 11, 2013, December 4, 2013, December 30, 2013, January 25, 2014 and February 21, 2014.

3

20. Ms. Merritt saw Dr. Tate on March 11, 2014. During that visit Ms. Merritt advised that she was still having pain issues. Dr. Tate suggested changing her Gabapentin to 600 mg four times a day to help with pain, particularly through the night. Defendant CVS Main filled the prescription for Gabapentin 600 mg that same day, 120 pills.

21. On March 19, 2014, Dr. Tate's office called in a refill for Gabapentin 800 mg, 90 pills and it was filled at CVS Main.

22. Defendant CVS Main refilled both the Gabapentin 600 mg and 800 mg for months without seeking clarification from Dr. Tate's office.

23. On August 28, 2015, at Ms. Merritt's suggestion, Dr. Tate changed Ms. Merritt's Gabapentin to 600 mg five times a day, to see if a lower dose with increased frequency would improve her discomfort. That same day Defendant CVS Main filled Gabapentin 600 mg, 150 pills.

24. Five days later, on September 2, 2015, Defendant CVS Main still filled Gabapentin 800 mg, 360 pills without calling Dr. Tate's office for clarification.

25. On September 29, 2015 and October 22, 2015 Defendant CVS Webb filled Gabapentin 600 mg, 150 pills.

26. During Ms. Merritt's November 20, 2015 office visit with Defendant Tate she was switched over to Lyrica and her Gabapentin was discontinued. On that same day Defendant CVS Main filled her prescriptions for Lyrica 100 mg, 60 pills and Gabapentin 600 mg, 150 pills without calling Dr. Tate's office for clarification.

27. Eight days later, on November 28, 2015, Defendant CVS Main filled Gabapentin 800 mg, 360 pills.

28. On December 16, 2015, Defendant CVS Webb filled Gabapentin 600 mg, 150 pills.

29. On January 5, 2016, Defendant CVS Main filled Lyrica 100 mg, 60 pills.

30. On January 12, 2016, Defendant CVS Webb filled Gabapentin 600 mg, 150 pills.

31. At her office visit on January 27, 2016, Ms. Merritt reported she stopped Lyrica. Defendant Tate restarted Gabapentin 600 mg to be tapered back up to four times a day.

32. On February 7, 2016, Defendant CVS Webb filled Gabapentin 600 mg, 120 pills.

33. On February 22, 2016, Defendant CVS Main filled Gabapentin 800 mg, 360 pills.

34. On March 4, 2016, Defendant CVS Webb filled Gabapentin 600 mg, 120 pills.

4

35. On April 1, 2016, Defendant CVS Webb filled Gabapentin 600 mg, 120 pills.

36. On April 30, 2016, Defendant CVS Webb filled Gabapentin 600 mg, 120 pills

37. On May 19, 2016, Dr. Tate's office called in a prescription for a three-month supply of Gabapentin 800 mg four times a day with three refills. CVS Main filled that prescription on May 20, 2016, July 29, 2016, October 5, 2016, December 16, 2016 and February 23, 2017.

38. On March 23, 2017 Ms. Merritt was found unresponsive in her bed. Despite the efforts of emergency medical technicians, Ms. Merritt was pronounced dead at the scene. The North Carolina Medical Examiner performed an autopsy and investigation and determined her cause of death to be acute oxycodone, gabapentin and alprazolam intoxication.

## FIRST CLAIM FOR RELIEF

39. Plaintiff incorporates herein by reference Paragraphs 1 through 38 of this Complaint.

40. CVS Defendants owed Sherrie Merritt a duty to care for and treat her using reasonable and ordinary care in accordance with the skill, training and experience of an individual practicing medicine with the same or similar training and experience in the same or similar community.

41. CVS Defendants breached the duties set forth above to care for and treat Sherrie Merritt. Specifically, they:

   a. repeatedly filled Gabapentin early;
   b. failed to contact Dr. Tate's office to seek clarification for prescriptions written;
   c. filled prescriptions for two different strengths of Gabapentin simultaneously for a period of almost three years;
   d. failed to notify Ms. Merritt of the risks associated with Gabapentin toxicity;
   e. failed to document any counseling they may have provided Ms. Merritt regarding her medication; and
   f. were negligent in such other ways as may be determined during the course of discovery.

42. The negligence of CVS Defendants constitutes a failure to exercise the degree of care required of pharmaceutical businesses in North Carolina. The conduct of CVS Defendants shows that they did not possess the degree of professional learning, skill and ability that others

5

Case 1:19-cv-00559-UA-JEP   Document 2   Filed 06/03/19   Page 5 of 7

similarly situated ordinarily possess. Further, CVS Defendants did not exercise reasonable care and diligence in the application of its collective knowledge and skill to the care of Sherrie Merritt, nor did they use their best judgment in Sherrie Merritt's treatment and care. The failure of CVS Defendants to comply with the applicable standard of care in their treatment of Sherrie Merritt as set forth above was a dereliction from their professional duties and constitutes negligence. Further, the negligence of CVS Defendants was a proximate and reasonably foreseeable cause of Ms. Merritt's death.

43. As a direct and proximate result of the negligence of CVS Defendants, whose negligence is imputed to Defendants, Sherrie Merritt died.

44. The CVS Defendants' acts or failures, which are the proximate cause of the Ms. Merritt's injuries and death, were committed in reckless disregard of Ms. Merritt's rights and were grossly negligent within the meaning of N.C. Gen. Stat. §90-21.19.

45. Plaintiff is the Administrator of the Estate of Sherrie Merritt, having been duly appointed by the Caswell County Clerk of Court on May 21, 2018. This action is brought pursuant to N. C. Gen. Stat. § 28A-18-2 and N. C. Gen. Stat. § 1-53(4).

46. Decedent Sherrie Merritt is survived by the following statutory beneficiaries who have not renounced their interest in Decedent's estate and also on whose behalf this action is brought:

    a. Kasey Minor, daughter; and

    b. Ronnie Minor, Jr., son.

47. This action is brought to recover on behalf of the statutory beneficiaries listed above all damages legally available under the North Carolina wrongful death statute including, but not limited to:

    a. medical expenses;

    b. pain and suffering;

    c. funeral and burial expenses;

    d. loss of the services, protection, care and assistance of the Decedent; and

    e. loss of the society, companionship, comfort, guidance, kindly offices and advice of the Decedent.

48. All injuries and damages occasioned as a result of the death of Sherrie Merritt are a direct and proximate result of CVS Defendants' negligence.

49. Consequently, Plaintiff is entitled to recover of the Defendants compensatory damages in an amount in excess of the jurisdictional limit of this Court.

### N.C.R.Civ. Pro. 9(j)

1. Plaintiff objects to the application of Rule 9(j) to this case. Without waiving this objection, pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure, the medical care and all medical records pertaining to Defendants' negligence that are available to the Plaintiff after reasonable inquiry have been reviewed by a person or persons reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is/are willing to testify that the medical care did not comply with the applicable standard of care. Further, if necessary, Plaintiff will seek to have said experts qualified as expert witnesses by motion under Rule 702(e) of the North Carolina Rules of Evidence. As an alternative only, Plaintiff hereby moves to have said experts qualified as expert witnesses pursuant to Rule 702(e) of the North Carolina Rules of Evidence.

WHEREFORE, Plaintiff respectfully prays the Court as follows:

a. That Plaintiff have and recover of Defendants a sum in excess of the jurisdictional limit of this Court in compensatory damages, plus interest from the date the suit was instituted, as provided by law;

b. To the extent necessary, Plaintiff hereby moves to have the 9(j) expert(s) qualified under Rule 702(e) of the North Carolina Rules of Evidence;

c. That the costs of this action be taxed against Defendants, including attorneys' fees; and

d. For such other relief as the Court may deem just and proper.

This the 19 day of March, 2019.

**LANIER LAW GROUP, P.A.**

*Donald Higley /mjv*

Donald S. Higley, II
Attorneys for Plaintiff
NC Bar No. 20814
4915 Piedmont Parkway, Suite 104
Jamestown, North Carolina 27282
Phone: (336) 506-1041
Facsimile: (336) 506-1016